IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL CASE NO. 1:21-cv-00033-MR

| | |
|---|---|
| **JAMES LELAND BAILEY,** ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> ) <br> **KILOLO KIJAKAZI, Acting** ) <br> **Commissioner of Social Security,** ) <br> ) <br> Defendant. ) <br> _____ ) | **MEMORANDUM OF** <br> **DECISION AND ORDER** |

**THIS MATTER** is before the Court on the Plaintiff's Motion for Summary Judgment [Doc. 12] and the Defendant's Motion for Summary Judgment [Doc. 16].

**I.     BACKGROUND**

On August 13, 2013, the Plaintiff, James Leland Bailey, filed an application for a period of disability and disability insurance benefits under Title II of the Social Security Act (the "Act") and protectively filed an application for supplemental security income under Title XVI of the Act. [Transcript ("T") at 191, 204-05]. In both applications, the Plaintiff alleged an onset date of April 30, 2012. [Id.]. The Plaintiff's claims were initially denied

on February 27, 2014, [id. at 254], and again denied upon reconsideration on July 10, 2014, [id. at 262]. On the Plaintiff's request, a hearing was held on October 20, 2016 before an Administrative Law Judge ("ALJ"). [Id. at 121]. On February 22, 2017, the ALJ issued a written decision denying the Plaintiff benefits. [Id. at 132].

On October 2, 2017, the Appeals Council denied the Plaintiff's request for review. [Id. at 1]. The Plaintiff appealed the Commissioner's decision to the United States District Court for the Western District of North Carolina, and, on March 12, 2019, the Honorable Frank Whitney, United States District Court Judge, entered an Order reversing and remanding the decision of the Commissioner. [Id. at 1061]. The Court held that remand was required because the ALJ erred by failing to resolve apparent conflicts between the vocational expert's ("VE") testimony and the Dictionary of Occupational Titles. [Id. at 1056-57].

On April 12, 2019, the Appeals Council vacated the ALJ's February 22, 2017 decision and remanded this case to the ALJ for further proceedings. [Id. at 1046]. On December 11, 2019, a second hearing was held before the ALJ. [Id. at 989]. At that hearing, the Plaintiff amended his alleged onset date to June 20, 2014. [Id. at 990]. On January 29, 2020, the ALJ issued a written decision finding that the Plaintiff was not disabled at any time through

2

December 31, 2016, the Plaintiff's date last insured. [Id. at 1002]. The ALJ also found that the Plaintiff was not disabled prior to January 14, 2020. [Id.]. However, the ALJ found that the Plaintiff became disabled on January 14, 2020, the date on which the Plaintiff's age category under the Act changed. [Id.].

On February 27, 2020, the Plaintiff submitted written exceptions disagreeing with the ALJ's January 29, 2020 decision. [Id. at 1120]. On December 17, 2020, the Appeals Council notified the Plaintiff that the Council considered the Plaintiff's exceptions and determined that no further review is warranted, thereby making the ALJ's January 29, 2020 decision the final decision of the Commissioner. [Id. at 977]. The Plaintiff has exhausted all available administrative remedies, and this case is now ripe for review pursuant to 42 U.S.C. § 405(g).

## II.     STANDARD OF REVIEW

The Court's review of a final decision of the Commissioner is limited to (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 401 (1971); and (2) whether the Commissioner applied the correct legal standards. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). "When examining [a Social Security Administration] disability determination, a reviewing court is required to

uphold the determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." Bird v. Comm'r, 699 F.3d 337, 340 (4th Cir. 2012). Substantial evidence "means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (internal quotation marks omitted); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (internal quotation marks omitted). "It consists of more than a mere scintilla of evidence but may be less than a preponderance." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation marks omitted).

"In reviewing for substantial evidence, [the Court should] not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ." Johnson, 434 F.3d at 653 (internal quotation marks and alteration omitted). Rather, "[w]here conflicting evidence allows reasonable minds to differ," the Court defers to the ALJ's decision. Id. (internal quotation marks omitted). To enable judicial review for substantial evidence, "[t]he record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013). It is the duty of the ALJ to "build an accurate

and logical bridge from the evidence to his conclusion." Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (citation omitted). "Without this explanation, the reviewing court cannot properly evaluate whether the ALJ applied the correct legal standard or whether substantial evidence supports his decisions, and the only recourse is to remand the matter for additional investigation and explanation." Mills v. Berryhill, No. 1:16-cv-00025-MR, 2017 WL 957542, at *4 (W.D.N.C. Mar. 10, 2017) (Reidinger, J.) (citing Radford, 734 F.3d at 295).

## III. THE SEQUENTIAL EVALUATION PROCESS

A "disability" entitling a claimant to benefits under the Social Security Act, as relevant here, is "[the] inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Administration Regulations set out a detailed five-step process for reviewing applications for disability. 20 C.F.R. §§ 404.1520, 416.920; Mascio v. Colvin, 780 F.3d 632, 634 (4th Cir. 2015). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." Pass v. Chater, 65 F.3d 1200,

5

1203 (4th Cir. 1995) (citation omitted). The burden is on the claimant to make the requisite showing at the first four steps. Id.

At step one, the ALJ determines whether the claimant is engaged in substantial gainful activity. If so, the claimant's application is denied regardless of the medical condition, age, education, or work experience of the claimant. Id. (citing 20 C.F.R. § 416.920). If not, the case progresses to step two, where the claimant must show a severe impairment. If the claimant does not show any physical or mental deficiencies, or a combination thereof, which significantly limit the claimant's ability to perform work activities, then no severe impairment is established and the claimant is not disabled. Id.

At step three, the ALJ must determine whether one or more of the claimant's impairments meets or equals one of the listed impairments ("Listings") found at 20 C.F.R. § 404, Appendix 1 to Subpart P. If so, the claimant is automatically deemed disabled regardless of age, education, or work experience. Id. If not, before proceeding to step four, the ALJ must assess the claimant's residual functional capacity ("RFC"). The RFC is an administrative assessment of "the most" a claimant can still do on a "regular and continuing basis" notwithstanding the claimant's medically determinable impairments and the extent to which those impairments affect the claimant's

ability to perform work-related functions. Social Security Ruling 96-8p; 20 C.F.R. §§ 404.1546(c), 404.943(c), 416.945.

At step four, the claimant must show that his or her limitations prevent the claimant from performing his or her past work. 20 C.F.R. §§ 404.1520, 416.920; Mascio, 780 F.3d at 635. If the claimant can still perform his or her past work, then the claimant is not disabled. Id. Otherwise, the case progresses to the fifth step where the burden shifts to the Commissioner. At step five, the Commissioner must establish that, given the claimant's age, education, work experience, and RFC, the claimant can perform alternative work which exists in substantial numbers in the national economy. Id.; Hines v. Barnhart, 453 F.3d 559, 567 (4th Cir. 2006). "The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations." 20 C.F.R. §§ 404.1520, 416.920; Mascio, 780 F.3d at 635. If the Commissioner succeeds in shouldering his burden at step five, the claimant is not disabled and the application for benefits must be denied. Id. Otherwise, the claimant is entitled to benefits.

## IV. THE ALJ'S DECISION

At step one, the ALJ found that the Plaintiff had not engaged in substantial gainful activity since June 20, 2014, the amended alleged onset

7

date. [T. at 992]. At step two, the ALJ found that the Plaintiff has the following severe impairments: "cervical and lumbar spine degenerative disc disease and facet arthritis, neuropathy, bilateral epicondylitis with mild degenerative changes of bilateral elbows, asthma, bipolar disorder with depression and anxiety with panic attacks." [Id.]. At step three, the ALJ determined that the Plaintiff does not have an impairment or combination of impairments that meets or medically equals the Listings. [Id.]. The ALJ then determined that the Plaintiff, notwithstanding his impairments, has the RFC:

> [T]o perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) except for no climbing of ladders, roofs or scaffolds; occasional climbing of ramps and stairs; no overhead reaching with the right upper extremity, the option to sit/stand with the ability to change positions once per hour up to 5 minutes at a time; no concentrated exposure to extreme heat, cold or humidity and no concentrated exposure to dust, odors[,] gases and pulmonary irritants. Additionally, the claimant can stay on task for two hours at a time throughout the workday; perform unskilled work requiring simple, routine and repetitive tasks, a GED reasoning level of 1 and one to two step instructions; no constant change in routine; no crisis situations; no complex decision-making; no production rate work and occasional interaction with the public, supervisors and co-workers.

[Id. at 994].

At step four, the ALJ identified the Plaintiff's past relevant work as tractor-trailer truck driver. [Id. at 1000]. The ALJ concluded, however, that

8

the Plaintiff is "unable to perform past relevant work as actually or generally performed." [Id.]. At step five, the ALJ determined that the Plaintiff "was not under a disability within the meaning of the Act at any time through December 31, 2016, the date last insured." [Id. at 1002]. The ALJ also determined that on January 14, 2020, the Plaintiff's age category under the Act changed to "an individual of advanced age." [Id. at 1000]. The ALJ concluded that prior to January 14, 2020 and based on the Plaintiff's age, education, work experience, and RFC, there were jobs existing in significant numbers in the national economy that the Plaintiff could have performed, including cleaner and polisher, sorter, and stuffer. [Id. at 1000-01]. The ALJ further concluded that beginning on January 14, 2020 and based on the Plaintiff's age, education, work experience, and RFC, there are no jobs existing in significant numbers in the national economy that the Plaintiff could perform. [Id. at 1001-02]. The ALJ therefore concluded that the Plaintiff was not disabled prior to January 14, 2020 but that he became disabled on that date. [Id. at 1002].

## V. DISCUSSION[1]

The Plaintiff now argues that the portion of the ALJ's decision pertaining to the period prior to January 14, 2020 should be reversed and remanded for further proceedings. [Doc. 13 at 21]. As one of his assignments of error, the Plaintiff asserts that "[i]n making his RFC finding and questioning the vocational witness, the ALJ indicated [the Plaintiff] could do no production rate work, but failed to otherwise explain the meaning of this term to the vocational witness or in his decision." [Id. at 19]. The Plaintiff argues that "the ALJ's failure to explain what 'production rate work' means thwarts meaningful review." [Id. at 20].

Social Security Ruling 96-8p explains how adjudicators should assess residual functional capacity. The Ruling instructs that the RFC "assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions" listed in the regulations.[2] SSR 96-8p; see also

---

[1] Rather than set forth a separate summary of the facts in this case, the Court has incorporated the relevant facts into its legal analysis.

[2] The functions listed in the regulations include the claimant's (1) physical abilities, "such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching);" (2) mental abilities, "such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, coworkers, and work pressures in a work setting;" and (3) other work-related abilities affected by

10

Case 1:21-cv-00033-MR   Document 19   Filed 09/07/22   Page 10 of 17

Mascio, 780 F.3d at 636 (finding that remand may be appropriate where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review) (citation omitted).

The RFC represents "the most [a claimant] can do despite [his or her] limitations." 20 C.F.R. § 404.1545(a)(1). The ALJ is responsible for determining a claimant's RFC, id. § 404.1546(c), based on "all the relevant evidence in the [claimant's] case record." Id. § 404.1545(a)(1). In forming the RFC, the ALJ "must both identify evidence that supports his conclusions and build an accurate and logical bridge from that evidence to his conclusion." Woods v. Berryhill, 888 F.3d 686, 694 (4th Cir. 2018) (brackets, emphasis, and internal quotation marks omitted); see also Monroe, 826 F.3d at 189. An ALJ's RFC "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g. laboratory findings) and nonmedical evidence (e.g. daily activities, observations)." Mascio, 780 F.3d at 636 (citing SSR 96-8p).

The Fourth Circuit has also instructed that the ALJ's inclusion of phrases such as work "requiring a production rate or demand pace" or work

---

"impairment(s) of vision, hearing, or other senses, and impairment(s) which impose environmental restrictions." 20 C.F.R. § 416.945.

11

performed in a "non-production oriented work setting" in the RFC must be accompanied by an explanation as to what those terms mean. See Thomas v. Berryhill, 916 F.3d 307, 312 (4th Cir. 2019) (concluding that the phrases "production rate" and "demand pace" are "certainly not common enough for [the court] to know what they mean without elaboration"); see also Perry v. Berryhill, 765 Fed. App'x 869, 872 (4th Cir. 2019) ("[N]o analogous regulatory definition exists for the 'non-production oriented work setting' specified by the ALJ, or for any other similar term. Nor, as we recently recognized, are such descriptions commonly used in our case law or otherwise self-explanatory."); Dameron v. Saul, No. 3:18-cv-00451-KDB, 2019 WL 6248581, at *4 (W.D.N.C. Nov. 21, 2019) (holding, in part, that the ALJ's failure to explain the phrase "production rate or demand pace" frustrated meaningful review of the ALJ's decision). Where the ALJ fails to explain the meaning of phrases such as "production rate" and "demand pace," it is "difficult, if not impossible, for [the court] to assess whether their inclusion in [a claimant's] RFC is supported by substantial evidence." Thomas, 916 F.3d at 312.

In the Plaintiff's RFC, the ALJ limited the Plaintiff to "no production rate work." [T. at 994]. However, the ALJ failed to include in the RFC assessment, or elsewhere in his decision, an explanation of what is meant

by the phrase "production rate work." Further, at the December 11, 2019 hearing, the ALJ and the VE had the following exchange:

> ALJ: Assume we have a hypothetical person . . . whose age ranges from 46 to 54, who has at least a high school education, who has the same physical and mental health background as the claimant, who can do a full range of light work except this person would be limited to a sit/stand option with ability to change position once per hour for up to five minutes at a time. No climbing ropes, ladders, and scaffolds, occasional climbing of ramps and stairs. Should avoid concentrated exposure to extreme heat and to extreme cold, avoid concentrated expose to extreme humidity, avoid concentrated exposure to dust, odors, gasses, et cetera. Would be limited to simple, routine, repetitive tasks of unskilled work, no constant change in routine, no crisis situations, no complex decision making, *no production rate work*. Occasional interaction with supervisors, and coworkers, and the public, and can stay on task two hours at a time. Are there any jobs?
>
> VE: One moment, your honor. Your honor, representative examples of jobs and numbers at the light exertional level of work would be jobs of sorter, the DOT number 569.687-022. SV of 2, national numbers are approximately 70,000. Cleaner and polisher, the DOT number 709.687-010, SVP of 2, national numbers are approximately 61,000. As well as router, that DOT number is 222.587-038. SVP of 2, national numbers are approximately 60,000.
>
> ALJ: What is the reasoning level . . . of these jobs?
>
> VE: The router reasoning level is two. The reasoning level for sorter as well as cleaner and polisher is one.
>
> ALJ: You have another . . . reasoning level one job?

VE: One moment, your honor. The job of stuffer can be performed with the DOT number of 780.687-046, SVP of 1, national numbers are approximately 55,000.

ALJ: Assume we added to the hypothetical with the reasoning level one jobs that . . . the [Plaintiff] would be limited to one to two step instructions. What affect, if any, would that have on the jobs you gave?

VE: That would not affect those jobs, your honor.

ALJ: . . . I'm going to make that reasoning level one question hypo two, and the one to two step instruction hypo three. And hypo four's going to be what if I added frequent overhead reaching with the right upper extremity and no overhead lifting with the right upper extremity, what effect would that have on any of the jobs you gave?

VE: That would not affect those jobs, your honor.

ALJ: Have the responses to the questions that I presented to you been consistent with the information provided on the DOT?

VE: Yes, sir, your honor, however I do want to mention that the testimony provided when taking into consideration overhead reaching or overhead lifting, an individual staying on task, simple routine tasks, interaction with coworkers and supervisors, *production rate pace*, also sit/stand option and the distinctions in regards to climbing; those characteristics were all testified to based on a reasonable degree of vocational certainty that is a result of my education and training, and also experience working with employers job search as well as job placement.

14

[Id. at 1029-31] (emphasis added).

Merely reciting the phrases "production rate work" or "production rate pace" does not explain what the ALJ intended when he used the phrase "production rate work" in the Plaintiff's RFC. See Danny S. v. Saul, No. 5:19-cv-00074, 2021 WL 263370, at *4 (W.D. Va. Jan. 21, 2021) (recommending that the ALJ's decision be reversed and remanded, in part, because "[t]he mere repetition of the terms 'production work' and 'production line' on a few occasions in the hearing transcript . . . does not assist this Court in understanding what 'production rate work' actually means"). Rather, the ALJ did not explain the meaning of the phrase "production rate work" in the hypotheticals he presented to the VE, and the VE similarly did not explain her understanding of the phrase when she identified occupations existing in the national economy that someone with the Plaintiff's age, education, work experience, and RFC could perform.

The ALJ's failure to explain the meaning of the phrase "production rate work" leaves the Court to "guess" as to what the ALJ intended. Accordingly, the ALJ's decision is "sorely lacking in the analysis" necessary for the Court to meaningfully review the ALJ's conclusions. Mascio, 780 F.3d at 636-37. A "reviewing court cannot be left to guess as to how the ALJ arrived at his conclusions." Mills, 2017 WL 957542, at *4. Instead, an RFC "assessment

15

must include a narrative discussion describing how the evidence supports each conclusion . . ." Mascio, 780 F.3d at 636 (quoting SSR 96-8p). As such, this matter must be remanded because the ALJ failed to "build an accurate and logical bridge from the evidence to his conclusion." Monroe, 826 F.3d at 189.

## VI. CONCLUSION

Because this Court lacks an adequate record of the basis for the ALJ's decision, it cannot conduct a meaningful review of that ruling. See Radford, 743 F.3d at 295. On remand, the ALJ's decision should include a narrative discussion of the evidence, as required by SSR 96-8p, explaining how he reconciled that evidence to his conclusions. In light of this decision, the Plaintiff's other assignments of error need not be addressed at this time but may be addressed on remand.

## ORDER

**IT IS, THEREFORE, ORDERED** that the Plaintiff's Motion for Summary Judgment [Doc. 12]. is **GRANTED,** and the Defendant's Motion for Summary Judgment [Doc. 16] is **DENIED.** Pursuant to the power of this Court to enter judgment affirming, modifying, or reversing the decision of the Commissioner under Sentence Four of 42 U.S.C. § 405(g), the decision of the Commissioner is **REVERSED,** and the case is hereby **REMANDED** for

further administrative proceedings consistent with this opinion. A judgment shall be entered simultaneously herewith.

**IT IS SO ORDERED.**

Signed: September 7, 2022

Martin Reidinger
Chief United States District Judge